ROBERT MOLNAR, Petitioner-Appellee, *v.* THE CITY OF AURORA *et al.,* Respondents-Appellants.

Second District (2nd Division)   No. 75-75

Opinion filed May 25, 1976.

Loren L. Heuertz and George P. Lindner, both of Reid, Ochsenschlager, Murphy & Hupp, of Aurora, for appellants.

Anthony F. Salerno, of Aurora, for appellee.

Mr. JUSTICE DIXON delivered the opinion of the court:

This action involves a petition for writ of mandamus filed by Robert Molnar seeking to compel the respondents to honor an alleged promotion of petitioner to the rank of lieutenant in the Aurora Fire Department. After a hearing the Circuit Court of Kane County issued the writ as requested.

On April 21, 1974, and prior thereto, petitioner Molnar was a fire fighter with the City of Aurora Fire Department. In May of 1972 the Civil Service Commission of the City of Aurora conducted an examination for promotion of fire fighters to the rank of lieutenant. Petitioner passed this examination and was placed ninth on a promotion eligibility roster of ten

persons who qualified for promotion to the rank of lieutenant. Prior to December 26, 1973, certain persons on the eligibility roster were promoted. On December 26, 1973, petitioner was fourth on the eligibility roster out of a possible five remaining.

During the week prior to December 26, 1973, the chief telephoned the appointing authority, explaining that three vacancies were open in the department for promotion from the rank of fire fighter to lieutenant and one vacancy was available for promotion from the rank of lieutenant to captain. In fact, the department had only three vacancies available for promotion to the rank of lieutenant.

After this conversation, the appointing authority notified the director of personnel of the Aurora Civil Service Commission that four promotions were needed to the rank of lieutenant from the rank of fire fighter. The Commission then certified the names of the five individuals on the eligibility roster for the promotion to the rank of lieutenant.

On December 26, 1973, the appointing authority sent a letter to petitioner-appellee congratulating him on his promotion to the rank of lieutenant and informing him that this promotion would become effective January 5, 1974. On December 27, 1973, it was discovered that there were only three vacancies in the rank of lieutenant and the next day petitioner was informed by letter and by telephone that he could not be promoted.

On January 5, 1974, the first three persons on the eligibility list certified for promotion to the rank of lieutenant by the Commission assumed their duties as lieutenants and received compensation therefor. Petitioner never assumed any duties as a lieutenant; never received compensation therefor; and expended no money for a uniform.

Petitioner contended in the trial court that he was technically promoted, notwithstanding that only three vacancies were available for promotion, and that he could not be removed from office except upon a showing of just cause. Since no just cause could be shown for removal, petitioner contended he then was entitled to maintain the rank of lieutenant permanently and receive pay commensurate therewith. The good faith of the appointing authority was never challenged; in fact, it was conceded that an error had been made.

The case was unduly complicated by the testimony of Lieutenant Glass who was third on the promotion eligibility roster. Glass steadfastly testified that he had not been promoted until on or about 21 January 1974. A letter from the Civil Service Commission dated 21 January 1974 which congratulated him on his *recent* appointment was the apparent cause of this testimony. The trial court in its judgment found that the Glass promotion had taken place some days after Molnar's. Glass however gave an affidavit correcting his testimony. Glass did in fact assume the rank of

lieutenant of January 5, 1974, he was notified of his promotion by the appointing authority by letter dated December 26, 1973, and attached the letter to his affidavit.

The appointing authority testified that he "took from the top down through the alleged number of promotions that were to be made" and that he sent the same letter to each of the four on December 26, 1973. Both he and the fire chief testified that each man had been selected in the sequence in which they appeared on the eligibility roster \* \* \*." The chief further testified, "In this particular case there was no reason that indicated one man should jump ahead of the other in sequence of promotion" and that on January 5, 1974, the three top men, Glass included, did take over their positions as lieutenants and collected pay as lieutenants from that date.

■■ The finding of the trial judge that the Glass promotion was days after Molnar's is against the manifest weight of the evidence. It is clear that the appointments were made in the sequence in which they appeared on the eligibility roster. The petitioner was fourth.

The case was further complicated by a misunderstanding on the part of appellants. All through trial proceedings and throughout their brief in this court they contend that since only three positions were open and since Molnar was fourth on the eligibility list he could not possibly have been promoted. Both the Aurora Civil Service Rules and the pertinent statute (Ill. Rev. Stat. 1973, ch. 24, par. 10—1—13) provide when a promotion is to be made the Civil Service Commission shall submit to the appointing authority the names of three applicants for each promotion having the highest rating. Petitioner Molnar was therefore eligible for appointment to the second and third vacancies. But it was not mandatory that he be appointed at all (*McDevitt v. Finn,* 248 Ill. App. 339, 342-43), since the appointing authority has power to select any one of the three eligible candidates for each vacancy.

In cities such as Aurora which have adopted the "Civil Service in Cities Act," the examination, certification, appointment, and promotion of city firemen are governed by the provisions of the act and the rules of the Civil Service Commission adopted thereunder. (Ill. Rev. Stat., ch. 24, par. 10—1—1 *et seq.*) In such cities the removal, discharge or suspension of firemen in the classified service is governed by section 10—1—18 of the act and the rules of the Civil Service Commission made pursuant to the act. (Ill. Rev. Stat., ch. 24, pars. 10—1—5, 10—1—18.) And under section 10—1—45 of the act, added in 1949, the final administrative decisions of the commission are judicially reviewable under the Administrative Review Act. (Ill. Rev. Stat., ch. 24, par. 10—1—45; ch. 110, par. 264 *et seq.*) In their reply brief appellants contend for the first time, in this court, that petitioner failed to exhaust his administrative remedy. The reply

brief, if any, shall be confined strictly to replying to arguments presented in the brief of the appellee (Supreme Court Rule 341 (e)(7), (g)); the point is deemed waived. *Wenzell v. MTD Products, Inc.,* 32 Ill. App. 3d 279, 295.

■■ To constitute an appointment to office there must be some open, unequivocal act of appointment on the part of the appointing authority empowered to make it. *(Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L. Ed. 60.) It may be said that an appointment to office is made and is complete when the last act required of the appointing authority vested with the appointing power has been performed. (63 Am. Jur. 2d *Public Officers and Employees* §99; (1972) *People ex rel. Laist v. Lower,* 251 Ill. 527, 529; Annot., 89 A.L.R. 132, 156 (1934).) In case of an appointment by a single executive it is undisputed that the appointment once made and completed is irrevocable. *(Marbury v. Madison.)* In such case the appointing power cannot revoke the appointment, and the one appointed can only be removed by lawful authority. *People v. Lower,* at 529.

*But, a vacancy must exist.* It is a condition precedent to the power to fill a vacancy in office that such vacancy in fact exists. 63 Am. Jur. 2d *Public Officers and Employees* §127 (1972).

An office is not vacant so long as it is supplied in the manner provided by law with an incumbent who is legally qualified to exercise the powers and perform the duties which pertain to it. 63 Am. Jur. 2d *Public Officers and Employees* §130 (1972).

■■ When the appointing authority  reached the fourth name on the list in the instant case a vacancy no longer existed. There was no power to fill a nonexisting vacancy. The purported appointment of petitioner was a nullity and mandamus should not have been granted. Especially in view of the fact that petitioner has not shown a clear right to the writ as such writ is never awarded in a doubtful case. *People ex rel. Blue Danube Co. v. Busse,* 248 Ill. 11, 16; *People ex rel. Albright v. Blair,* 292 Ill. 139, 144.

For the above reasons the judgment of the Circuit Court of Kane County is reversed.

Reversed.

T. J. MORAN, P. J., and RECHENMACHER, J., concur.